1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MASA NATHANIEL WARDEN,              No.  2:19-cv-00431 TLN AC P

12                  Plaintiff,

13        v.                            FINDINGS AND RECOMMENDATIONS

14   B. COWAN; W. WILLIAMS; and N.
     WEAVER,
15
                    Defendants.
16

17

18        Plaintiff's motion for reconsideration (ECF No.131) and defendants' motion for summary

19   judgment (ECF No. 133) are now before the court.  Before addressing these motions, the

20   undersigned reviews the procedural posture of the case.

21                          I.      Background

22        Plaintiff, a state prisoner, field this action pro se and in forma pauperis on February 19,

23   2019.  ECF Nos. 1, 3.  On September 19, 2020, defendants moved for summary judgment,

24   contending in part that plaintiff's claims against Corporal Will Williams were barred by Heck v.

25   Humphrey, 512 U.S. 477 (1994). ECF No. 43-1 at 12-13.  Under Heck, a prisoner may not

26   proceed on a claim for damages under § 1983 if a judgment favoring plaintiff "would necessarily

27   imply the invalidity of his conviction or sentence."  Heck, 512 U.S. at 487.  Defendants also

28   contended that Officers Weaver and Cowan were entitled to summary judgment on the merits,

                                          1

1  and/or on qualified immunity grounds. ECF No. 43-1 at 14-23. The undersigned issued findings

2  and recommendations suggesting the motion be granted as to Williams only, concluding that the

3  claims against him were <u>Heck</u> barred. ECF No. 52. Both plaintiff and defendants objected (ECF

4  Nos. 53, 54), but the recommendations were adopted in full by Senior District Judge Morrison C.

5  England, Jr. ECF No. 56.

6      On November 18, 2020, the undersigned issued an order appointing counsel for plaintiff.

7  ECF No. 55. Counsel for defendants filed an interlocutory appeal of the order denying qualified

8  immunity to Weaver and Cowan to the Ninth Circuit. ECF No. 63. The Ninth Circuit affirmed

9  the district court's decision. ECF Nos. 77, 87. On July 22, 2022, plaintiff's counsel filed a

10  motion to amend the complaint and re-open discovery. ECF No. 83. The motion was granted in

11  part and denied in part by District Judge Troy L. Nunley, who allowed amendment except as to

12  the request to revive the excessive force claim against Williams, which had been dismissed as

13  <u>Heck</u>-barred. ECF No. 88 at 8. Plaintiff was informed in that order that he must file a motion for

14  reconsideration to revive the claim against Williams, and that the issue could not be considered

15  on a motion to amend. <u>Id.</u> The operative Second Amended Complaint ("SAC") was filed on

16  March 16, 2023, and it does not include an excessive for claim against Williams. ECF No. 89.

17      On November 6, 2024, plaintiff filed a motion for reconsideration of the order finding the

18  excessive force claim against Williams <u>Heck</u>-barred, citing new evidence that Williams fired

19  more than the single round that was at issue in the underlying charging document. ECF No. 131.

20  That same day, defendants filed a motion for summary judgment as to the Second Amended

21  Complaint. ECF No. 133. Both motions are now before the undersigned. The court addresses

22  the motion for summary judgment first.

23              **II.    Standard for Summary Judgment**

24      Summary judgment is appropriate when the moving party "shows that there is no genuine

25  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

26  Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

27  of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec. Litig.</u>, 627

28  F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The

2

1    moving party may accomplish this by "citing to particular parts of materials in the record,

2    including depositions, documents, electronically stored information, affidavits or declarations,

3    stipulations (including those made for purposes of the motion only), admissions, interrogatory

4    answers, or other materials" or by showing that such materials "do not establish the absence or

5    presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

6    support the fact." Fed. R. Civ. P. 56(c)(1).

7         Summary judgment should be entered, "after adequate time for discovery and upon

8    motion, against a party who fails to make a showing sufficient to establish the existence of an

9    element essential to that party's case, and on which that party will bear the burden of proof at

10   trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

11   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

12   a circumstance, summary judgment should "be granted so long as whatever is before the district

13   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

14   56(c), is satisfied." Id.

15        If the moving party meets its initial responsibility, the burden then shifts to the opposing

16   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

17   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

18   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

20   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

21   Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

22   fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

23   Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809

24   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

25   reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

26   In the endeavor to establish the existence of a factual dispute, the opposing party need not

27   establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed

28   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

3

1    truth at trial.'"  T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

2    Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to

3    pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

4    trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

5          "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

6    court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

7    v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

8    the opposing party's obligation to produce a factual predicate from which the inference may be

9    drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

10   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

12   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

13   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

14   U.S. at 289).

15              **III.    Judicial Notice and Consideration of Evidence**

16          Defendants ask the court to take judicial notice of the following exhibits: (1) Exhibit A

17   Complaint – Criminal, Felony, filed on August 6, 2018, in the Shasta County Superior Court

18   under Case No. 18-05051; (2) Exhibit B - Complaint – Criminal, Felony, filed on August 6, 2018,

19   in the Shasta County Superior Court under Case No. 18-05052; (3) Exhibit C - Felony Change of

20   Plea; Waiver of Rights; Advisement of Consequences; Findings and Order, filed on August 21,

21   2018, in the Shasta County Superior Court under Case Nos. 18-F-05051 and 18-F-05052; (4)

22   Exhibit D - Court Reporter Sue Smedley's Transcript of Felony Plea & Judgment and Sentencing

23   hearing before Hon. Adam B. Ryan in Department 1 of the Shasta County Superior Court on

24   August 21, 2018, relating to Case Nos. 18F5051, 18F5052, and 18F5398; (5) Exhibit E - Shasta

25   County Sheriff's Office "OIS Binder," a 322-page PDF document, received from Redding Police

26   Detective Harris Smiler, from evidence is stored in the ReddingR001574; (6) Exhibit F - Shasta

27   County District Attorney report, dated May 23, 2019, regarding July 23, 2018, Officer Involved

28   Shooting involving Masa Nathaniel Warden; (7) Ninety-nine SHASCOM audio recordings from

                                              4

1   the morning of July 23, 2018, a true and correct copy of which was converted to windows media

2   audio/video format and burned onto a USB flash drive and submitted to the Court pursuant to

3   Local Rules; and (8) Mary St OIS surveillance video from Freedom High School, a true and

4   correct copy of which was converted to windows media audio/video format and burned onto a

5   USB flash drive and submitted to the Court pursuant to Local Rules.  ECF No. 142.  Plaintiff

6   contests judicial notice as to Exhibits A, B, E, and F.  ECF No. 146.

7          Federal Rule of Evidence 201 permits the Court to take judicial notice at any time of

8   adjudicative facts that are not subject to reasonable dispute.  A fact is not subject to reasonable

9   dispute if it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2)

10   capable of accurate and ready determination by resort to sources whose accuracy cannot

11   reasonably be questioned. Fed. R. Evid. 201(b).  The court takes judicial notice of Exhibits C and

12   D, which are court records indisputably subject to judicial notice.  United States v. Wilson, 631

13   F.2d 118, 119-20 (9th Cir. 1980) (holding that facts that may be judicially noticed include court

14   records).  Plaintiff does not dispute that the court should take judicial notice of these exhibits.

15          As to the remaining submitted evidence, the undersigned notes that this case is before the

16   court at the summary judgment stage.  Consistent with this procedural posture, the court has

17   reviewed and considered all of the evidence presented, including video and photographic footage,

18   in order to determine whether a genuine issue of material fact exists.  Scott v. Harris, 550 U.S.

19   372, 380 (2007).  Judicial notice is not required for the court to consider the parties' exhibits for

20   this purpose, as the court is not accepting the truth of any facts.

21                          **IV.    Statement of Undisputed Facts**

22          Unless otherwise specified, the following facts are either expressly undisputed by the

23   parties or have been determined by the court, upon a full review of the record, to be undisputed

24   by competent evidence.  Defendants' stated facts with plaintiff's response is located at ECF No.

25   148.  Defendants' reply is located at ECF No. 159.

26          This case involves an incident that took place on July 23, 2018, in Redding, California.

27   Plaintiff Masa Warden injected himself with drugs and had crystal methamphetamine in his

28   system on that date.  Deposition of Masa Nathanael Warden, taken April 28, 2020 ("Warden

Depo.") (ECF No. 43-7) at 27:5-26, 28:1-6.  Early in the morning, plaintiff jumped into the pool at Shasta High School and swam fully clothed, leaving the pool area in his wet clothes with a pair of blue goggles on his forehead, and a white towel around his waist.  Warden Depo. 57:19-25, 59:1-19, 65:1-10, 68:16-24.  When plaintiff was leaving the school, he was confronted by John Decker, with whom a fight ensued, resulting in plaintiff punching Mr. Decker multiple times and threatening to kill him.  Warden Depo. 60:2-25, 61:15-23, 62:1-8, 65:20-25, 66:6-11.  Decker called 9-1-1 and reported the attack, advising the dispatcher that the suspect was a black male adult, short hair, approximately 5'9" to 5'10" tall, wearing a gray or white shirt, khaki pants, and a pair of blue swimming goggles on his head.  Meanwhile, plaintiff fled the scene.  Warden Depo. 61:5-8, 62:16-18; Declaration of Will Williams ("Williams Decl.") ¶4; Declaration of Bryan Cowan ("Cowan Decl.") ¶4; Declaration of Nick Weaver ("Weaver Decl.")  ¶4.

At or around 7:58 AM, Redding Police Officer Eric Little distributed a still photo of Warden, taken from the surveillance footage at Shasta High School, to Redding Police Department officers who were searching for the suspect and advised that the suspect they were looking for was a "148."  ECF No. 148 at 2-3.  A local resident, Nueme Wells, called 9-1-1 and reported to SHASCOM dispatchers that her surveillance cameras showed an adult black male intruder wearing a "gray-ish" shirt and long pants had come through the gate at her 4-plex residence located at 250 Overhill Drive around 6:00 AM that morning, had left a backpack on her porch, and burglarized a tenant.  Id. at 3.  Corporal Williams heard the SHASCOM transmission about the intruder at 250 Overhill Drive and radioed Chief of Police Roger Moore that the backpack left behind could have been left by the same suspect responsible for the attack on John Decker at Shasta High School that morning, and Officer Moore asked to be dispatched to the call to investigate the same.  Id. at 3-4.

At 9:01 AM, James Milestone called 9-1-1 and reported to SHASCOM that a black male wearing a blue shirt had been acting strangely on the Sacramento River Trail: he appeared to be on drugs, was threatening people, talking to himself, and asking people if they wanted to fight. Id. at 4.  After completing his investigation at 250 Overhill Drive, Officer Moore advised over the police radio that the suspect wanted for the residential burglary at 250 Overhill Drive was the

6

same suspect they were searching for in response to the attack on John Decker at Shasta High School and, based on the description provided by James Milestone, was likely also the same person who was causing problems along the Sacramento River Trail.  Id.  At approximately 9:47 AM, Redding Police Officer Eric Little reported over the radio that he had spotted plaintiff near the Sacramento River Trail access point at the west end of Overhill Drive.  Id. at 5.  After hearing Officer Little's radio call, Corporal Williams began responding to Mary Street to make contact with plaintiff.  Id.

Corporal Williams reported to the area and encountered plaintiff; plaintiff began moving toward Williams.[1]  ECF No. 43-4 at 6.  Officer Williams shot[2] at plaintiff, who "dropped instantly, falling hard to the ground like a sack of potatoes."  Id.  Williams made two radio calls stating that shots had been fired, there was one down, and immediate medical assistance was needed.  Id.  After the calls were made, Officers Cowan and Weaver arrived at the scene.  ECF No. 148 at 11.  Williams communicated to Cowan and Weaver that he believed plaintiff a gun.  ECF No. 148 at 11.  Cowan and Weaver shot additional rounds at plaintiff.[3]  After the additional shots were fired, Weaver radioed that additional shots were fired and requested medical response Code 3.  ECF No. 148 at 16.  Plaintiff sustained multiple injuries including but not limited to bullet fragments in the bilateral lower extremities, the distal third of the right forearm anteriorly, the right upper posterior thigh, the right inguinal area, the left quadricep, the right gluteal area, the right anterior oblique, the distal humerus, the distal left forearm, and the right hip.  ECF No. 148 at 17.

On August 21, 2018, plaintiff entered a plea agreement in response to charges filed

---

[1]  The parties dispute, and there is conflicting evidence, regarding plaintiff's level of cooperation with Williams and whether Williams had any reasonable basis to believe that plaintiff had a weapon.  ECF No. 148 at 7-8.

[2]  The parties dispute, and there is conflicting evidence, regarding the number of shots fired, with Williams asserting he fired only one shot, and plaintiff noting that two bullets were missing from Williams' firearm after the incident.  ECF No. 148 at 9-10.

[3]  The parties dispute, and there is conflicting evidence, regarding verbal communications between plaintiff and the officers, and plaintiff's physical movements immediately leading to Cowan and Weaver firing additional shots, as well as the number of total shots fired.  ECF No. 148 at 13-14.

1    against him.  ECF No. 43-8 at 130.  In relevant part, plaintiff plead "no contest" to a violation of

2    Penal Code § 69, obstructing or resisting an executive officer, as to Williams.  ECF No. 43-8 at

3    134-35 (Sentencing Hearing Transcript).  The "Summary of Events" attached to the criminal

4    complaint upon which the plea was entered stated that plaintiff was "uncooperative" with

5    Williams, that he made movements "with his hand as if he was preparing to draw an unknown

6    type of weapon from his waistband area," that Williams gave him "multiple commands to show

7    his hands and to get out his hands out of his pocket," but that he "continued to make movements

8    to the area of his waistband," and that Williams "fired one round, causing [plaintiff] to fall to the

9    ground."  ECF No. 43-7 at 127-28 (Criminal Complaint Summary of Events).  Penal Code §69

10   charges as to Cowan and Weaver were dismissed in exchange for the plea of "no contest" as to

11   Williams.  ECF Nos. 158 at 3; 142 at 9.

## V.    Analysis

13   Defendants City of Redding, Roger Moore, Will Williams, Bryan Cowan, and Nick

14   Weaver move for summary judgment on all counts, or alternatively, partial summary judgment.

15   ECF No. 133 at 2.  Plaintiff opposes the motion.  ECF No. 145.  Defendants replied.  ECF No.

16   158/

17      A.  Plaintiff's Remaining Claims are Not _Heck_-Barred

18   As stated above, plaintiff's claim against Williams has been dismissed as barred by Heck

19   v. Humphrey, 512 U.S. 477 (1994), with a motion for reconsideration pending separately before

20   the court.  ECF No. 88 at 8.  Defendants now contend that Heck bars plaintiff's claims against all

21   of the defendants, because "the factual basis cannot be parsed through in order to bar a §1983

22   action against fewer than all officers who were involved in the incident."  ECF No. 133-1 at 17.

23   This argument, especially in light of the facts of this case, is baseless.

24   As stated above, the Heck doctrine prevents a prisoner from proceeding on a claim for

25   damages under § 1983 if a judgment favoring plaintiff "would necessarily imply the invalidity of

26   his conviction or sentence."  Heck, 512 U.S. at 487.  In such a case, the plaintiff is foreclosed

27   from proceeding absent proof that the conviction or sentence has been reversed, expunged or

28   invalidated.  Id. at 486–487.  However, "if the district court determines that the plaintiff's action,

1   even if successful, will not demonstrate the invalidity of any outstanding criminal judgment

2   against the plaintiff, the action should be allowed to proceed ...." Id. at 487.  As an illustration of

3   the rule's application, the Heck Court explained that an individual convicted of resisting arrest,

4   defined as intentionally preventing a peace officer from effecting a lawful arrest, would be barred

5   from bringing a claim for damages for unlawful arrest.  Id. at 487 n.6.  That result is compelled by

6   the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of

7   his conviction offense: the lawfulness of the arrest.  Id.

8          When a plaintiff brings an excessive use of force claim and has been convicted of resisting

9   arrest, application of the Heck bar turns on the relationship between the arrest that has been

10  determined lawful in the criminal case and the use of force alleged to have violated plaintiff's

11  rights.  For example, an "allegation of excessive force by a police officer would not be barred by

12  Heck if it were distinct temporally or spatially from the factual basis for the person's conviction."

13  Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012); see also Sanford v. Motts,

14  258 F.3d 1117, 1120 (9th Cir. 2001) ("[e]xcessive force used after an arrest is made does not

15  destroy the lawfulness of the arrest").  Similarly, Heck does not bar an excessive force claim

16  based on allegations that the force used was unreasonable in relation to the degree of resistance to

17  arrest.  Hooper v. County of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011).  Such a claim, if

18  proven, would not imply the invalidity of a conviction for resisting arrest.  Id.  In sum, Heck does

19  not bar claims against police for excessive force arising from conduct independent of the facts

20  giving rise to a plaintiff's prior conviction.  Smith v. City of Hemet, 394 F.3d 689, 698 (9th Cir.

21  2005)–99 (9th Cir.) (en banc), cert. denied, 545 U.S. 1128 (2005).

22         In contrast, a § 1983 action must be dismissed if the criminal conviction stands and arises

23  "out of the same facts ... and is fundamentally inconsistent with the unlawful behavior for which

24  section 1983 damages are sought ...."  Beets, 669 F.3d at 1042 (internal citations and quotation

25  marks omitted) (barring plaintiff's § 1983 claim for excessive force when decedent killed by

26  officer, but accomplice convicted of aiding and abetting assault on peace officer).  Where the

27  alleged wrongful conduct that serves as the basis of the § 1983 claim is very "closely interrelated"

28  with the act for which plaintiff was convicted, the claim is Heck-barred.  Cunningham v. Gates,

9

1    312 F.3d 1148, 1154 (9th Cir. 2002), as amended on denial of reh'g (Jan. 14, 2003) (applying

2    Heck bar where there was no break between the plaintiff's provocative act of firing on the police

3    and the police response that he claimed was excessive).

4         The application of Heck is a highly fact-dependent inquiry that turns on the precise factual

5    basis for the conviction.  Here, plaintiff pled no contest to a charge of violating Cal. Penal Code §

6    69 (resisting or obstructing an officer), specifically as to Corporal Williams, and was convicted.

7    Similar charges as to Officers Weaver and Cowan were dismissed as part of the plea deal.  ECF

8    No. 158 at 4.  Defendants' contention that Warden's plea as to Williams creates a Heck bar to his

9    claims against Weaver and Cowan is belied by the fact that Warden was not convicted on charges

10   having to do with Weaver and Cowan.  Success on a §1983 claim of excessive force as to Waver

11   and Cowan cannot possibly undermine Warden's conviction or sentence, which had nothing to do

12   with Weaver or Cowan.

13        Further, the facts that underlie Warden's no contest plea as to Williams are temporally and

14   factually distinct from the point at which Cowan and Weaver fired their weapons.  A recently

15   issued Ninth Circuit case helpfully clarifies the "chain of events" analysis described in prior

16   caselaw.  In Estate of Hernandez by & through Hernandez v. City of Los Angeles, the Court

17   addressed a case in which a police officer shot a suspect, Daniel Hernandez, "six times, the final

18   round killing him, after he ignored her repeated commands to stop moving toward her and drop

19   his knife."  139 F.4th 790, 794-95 (2025).  The Court explained that while "the entire shooting

20   occurred over just six seconds, the officer fired three distinct volleys of two shots, pausing after

21   each."  Id.  The officer fired the final volley—shots five and six—after Hernandez had collapsed

22   on the ground.  Id. at 795.  Hernandez was on his back with his knees curled up to his chest,

23   rolling away from the officer.  Id.  Although all six shots occurred within seconds and were all

24   fired by the same officer, the Court distinguished the first four shots, which were fired while the

25   suspect was standing, from the final two, which were fired when the suspect was on the ground in

26   a fetal position, rolling away from the officer.  Id.  The Court of Appeals reversed the district

27   court's entry of summary judgment on Hernandez's Fourth Amendment claim in favor of the

28   officer, holding that "[i]t has been clearly established for more than a decade that when an officer

10

1    shoots and wounds a suspect, and he falls to the ground, the officer cannot continue to shoot him,

2    absent some indication that he presents a continuing threat, without first reassessing the need for

3    lethal force." Id.

4        Hernandez did not involve application of a Heck bar.[4]  Nonetheless, the Ninth Circuit's

5    reasoning is enlightening here because it provides clarity as to how the court should view a "chain

6    of events" with respect to an officer-involved shooting and a plea that stipulates to certain facts.

7    When a case involves a plea of no contest, as it does here, the question of whether the Heck bar

8    applies turns on exactly what facts the plea was based on; the facts that establish the foundational

9    basis for the plea cannot be undermined by the §1983 claim.  See Winder v. McMahon, 345 F.

10   Supp. 3d 1197, 1203 (C.D. Cal. 2018).

11       The Second Amended Complaint, as drafted, alleges an excessive force claim against

12   defendants Cowan and Weaver for firing multiple rounds at plaintiff, who was already on the

13   ground by the time they arrived on the scene.  ECF No. 89 at 11.  The Fourth Amendment

14   analysis requires balancing the "nature and quality of the intrusion" on a person's liberty with the

15   "countervailing governmental interests at stake" to determine whether the use of force was

16   objectively reasonable under the circumstances.  Graham v. Connor, 490 U.S. 386, 396 (1989).

17   "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: The question is

18   whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

19   confronting them[.]"  Id. at 397 (citations omitted); see Rodriguez v. County of Los Angeles, 891

20   F.3d 776, 797 (9th Cir. 2018) ("We determine whether the Fourth Amendment has been violated

21   by assessing the objective reasonableness of the force used, balancing the degree of intrusion

22   against the government's interest.").

23       Based on a comparative review of plaintiff's plea and his §1983 claims, the undersigned

24   concludes that the claims against Cowan and Weaver are not Heck-barred.

25   ////

26   _____

27   [4]  In Hernandez, the district court granted summary judgment in the officer's favor finding that
     the use of lethal force was reasonable under the circumstances and alternatively, that the officer
     was entitled to qualified immunity.  Est. of Hernandez by & through Hernandez v. City of Los

28   Angeles, 139 F.4th 790, 797 (9th Cir. 2025).

1    B.  Judicial Estoppel Does Not Preclude Plaintiff's Claims

2        Defendants make a non-specific and underdeveloped argument that plaintiff "is judicially

3    estopped from relying on facts in this case, which are directly in conflict with the factual basis for

4    his criminal plea," referencing without explaining the application of a 1996 case from the Fourth

5    Circuit.  ECF No. 133-1 at 19.  Defendants do not identify any specific facts that they wish to

6    exclude, nor do they make clear why this two-paragraph conclusory statement is included in their

7    motion for summary judgment.  The court finds that this issue is not properly raised and declines

8    to consider it.

9    C.  The Officer Defendants are Not Entitled to Qualified Immunity

10        Defendants contend that they are entitled to qualified immunity.  "[G]overnment officials

11   performing discretionary functions generally are shielded from liability for civil damages insofar

12   as their conduct does not violate clearly established statutory or constitutional rights of which a

13   reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations

14   omitted).  The Supreme Court has established a two-step inquiry for determining whether

15   qualified immunity applies.  Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by

16   Pearson, 555 U.S. 223).  First, a court must ask, "[t]aken in the light most favorable to the party

17   asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

18   right?"  Id.  Second, if the answer to the first inquiry is "yes," the court must ask whether the

19   constitutional right was "clearly established."  Id.  This second inquiry is to be undertaken in the

20   specific context of the case.  Id.  In Pearson v. Callahan, the Supreme Court removed any

21   requirement that the Saucier test be applied in a rigid order, holding "[t]he judges of the district

22   courts and the courts of appeals should be permitted to exercise their sound discretion in deciding

23   which of the two prongs of the qualified immunity analysis should be addressed first in light of

24   the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.

25        "The plaintiff bears the burden of proof that the right allegedly violated was clearly

26   established."  Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation

27   marks omitted).  "To meet this standard the very action in question need not have previously been

28   held unlawful."  Id. (internal quotation marks omitted).  This is especially the case in the context

1  of alleged Fourth Amendment violations, where the constitutional standard of "reasonableness"

2  requires a fact-specific inquiry. Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (en banc).

3  The court must determine "whether a reasonable officer would have had fair notice that the action

4  was unlawful[.]" Tarabochia, 766 F.3d at 1125 (internal quotation marks and brackets omitted).

5  At its base, "[t]he qualified immunity doctrine rests on a balance between, on the one hand,

6  society's interest in promoting public officials' observance of citizens' constitutional rights and,

7  on the other, society's interest in assuring that public officials carry out their duties and thereby

8  advance the public good." Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir. 2004).

9          The facts in this case, particularly those that go to the reasonableness of the officers'

10 conduct, are heavily disputed. Defendants acknowledge this in the introduction to their motion,

11 but assert that "summary judgment is still appropriate, because the facts which are *material* to this

12 case are not *genuinely* in dispute." ECF No. 133-1 at 9 (emphasis original). The motion for

13 summary judgment does not argue defendants' entitlement to summary judgment on a count-by-

14 count basis, instead asserting generally that the evidence refutes all of plaintiff's claims.

15 Defendants' argument does not accurately reflect the facts of this case. Defendants largely pit

16 their own testimony against plaintiff's, a dispute which raises issues of credibility that must be

17 determined at trial. To the extent defendants rely on video, photographic and audio exhibits, the

18 court is not persuaded. Having reviewed all submitted evidence, the court finds it inconclusive

19 and unclear—the images are taken at distance, and the views are often obstructed. The evidence

20 submitted is simply inadequate to clearly confirm either side's version of events.

21         The Ninth Circuit has repeatedly recognized that excessive force cases often turn on

22 credibility determinations, and that the excessive force inquiry "nearly always requires a jury to

23 sift through disputed factual contentions, and to draw inferences therefrom." Santos v. Gates, 287

24 F.3d 846, 853 (9th Cir. 2002). Where, as here, facts relevant to the reasonableness of force used

25 are disputed, the case cannot be resolved at summary judgment on qualified immunity grounds.

26 See Liston v. County of Riverside, 120 F.3d 965, 975 (9th Cir. 1997), as amended (Oct. 9, 1997);

27 Santos, 287 F.3d at 853. Further, the recently decided Hernandez case, in which the Ninth Circuit

28 plainly held that it is "clearly established that continuing to shoot a suspect who appears

13

1   incapacitated violates the Fourth Amendment," seriously undermines defendants' claims of

2   entitlement to qualified immunity.  139 F.3d at 802.  Accordingly, qualified immunity is not a

3   proper ground for summary judgment.

4        D.  Defendants are Not Entitled to Summary Judgment on Conspiracy Liability

5            The Second Amended Complaint alleges a Conspiracy to Deprive Constitutional Rights

6   Based on Race pursuant to 42 U.S.C. §§ 1985(2-3).  ECF No. 89 at 13.  A cause of action for

7   conspiracy under 42 U.S.C. § 1985(3) has four elements: (1) a conspiracy; (2) for the purpose of

8   depriving, either directly or indirectly, any person or class of persons of the equal protection of

9   the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of

10  this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any

11  right or privilege of a citizen of the United States.  United Bhd. of Carpenters & Joiners of Am. v.

12  Scott, 463 U.S. 825, 828–29 (1983).  "Further, the second of these four elements requires that in

13  addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that

14  right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory

15  animus behind the conspirators' action.'"  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th

16  Cir. 1992) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

17           Defendants' argument for summary judgment on this claim is cursory and conclusory.

18  Defendants argue "there is no evidence in the record that Defendants had the requisite mental

19  state to be liable for conspiracy.  Thus, Plaintiff will be unable to prove an essential element of

20  his claim."  ECF No. 133-1 at 26-27.  Plaintiff argues in return that the "record establishes that

21  the defendants acted in unison in firing their service weapons multiple times without justification

22  [and] Defendants acted in concert in failing to report the truth of their unlawful actions and

23  preserve material evidence."  ECF No. 145 at 24.  Defendants' argument on this point is

24  underdeveloped; they do not meet their burden to demonstrate that they are entitled to summary

25  judgment on this claim.

26       E.  Defendants Are Not Entitled to Summary Judgment on Monell Liability

27           Defendants argue that "the gravamen of each of [plaintiff's] four causes alleging

28  supervisor or municipal liability is that the City failed to properly train its police officers," and

14

1   that defendants are entitled to judgment because plaintiff has failed to show a pattern of

2   constitutional violations.  ECF No. 133-1 at 28.  In order to successfully state a claim under §

3   1983 against a municipality, a plaintiff must go beyond showing the municipality's employee(s)

4   violated his constitutional rights; he must additionally show: (a) an identified municipal "policy"

5   or "custom" that caused his injury; (b) that a final policymaking official, as defined by state law,

6   made the decision at issue; or (c) a final policymaker delegated such authority to, or previously

7   ratified a similar deprivation by a subordinate.  Bd. of the County Comm'rs v. Brown, 520 U.S.

8   397, 403-404, 406-407 (1997); Monell v. Dep't of Soc. Servs. of City of N.Y.C., 436 U.S. 658,

9   694 (1978).  The Ninth Circuit has "long recognized that a custom or practice can be inferred

10   from widespread practices or evidence of repeated constitutional violations for which the errant

11   municipal officials were not discharged or reprimanded."  Hunter v. City of Sacramento, 652 F.3d

12   1225, 1233-34, 1236 (9th Cir. 2011); McKay v. City of Hayward, 949 F.Supp.2d 971, 986 (N.D.

13   Cal. 2013); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (inaction).

14        Municipal liability may also be predicated on the entity's failure to train its employees,

15   where the "failure to train amounts to deliberate indifference to the rights of persons with whom

16   the [employees] come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989); see also

17   Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006); Lee v. City of Los

18   Angeles, 250 F.3d 668, 681 (9th Cir. 2001).  To state a § 1983 claim based on a failure to

19   properly train plaintiff must show: "(1) [plaintiff] was deprived of a constitutional right, (2) the

20   municipality had a training policy that 'amounts to deliberate indifference to the [constitutional]

21   rights of the persons' with whom [its police officers] are likely to come into contact;' and (3)

22   [plaintiff's] constitutional injury would have been avoided had the municipality properly trained

23   those officers."  Young v. City of Visalia, 687 F.Supp.2d 1141, 1148 (E.D. Cal. 2009) (quoting

24   Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)).

25        Plaintiff asserts that his claims do not rest entirely on failure to train, but also on

26   supervisory ratification of unlawful conduct.  ECF No. 154 at 24.  Plaintiff argues that summary

27   judgment is inappropriate because a "jury could find that City rubber-stamped this obvious use of

28   unreasonable deadly force, with conscious disregard, causing department members to believe

1  that similar acts of misconduct are permissible and will go unpunished." ECF No. 145 at 25. The

2  court agrees that the material facts of this case, including the recording and reporting of this case,

3  are far too disputed to warrant summary judgment on the municipal liability claims. Defendant

4  Moore submitted a declaration and exhibits reflecting that the officer's use of force was reviewed

5  by a multi-agency team and that there was an administrative inquiry initiated by Moore, and all

6  reviews determined that there was no unlawful use of force. ECF No. 158-1 at 2-3. Whether

7  these reviews were inadequate or biased, as plaintiff alleges, presents issues of disputed material

8  fact rendering the issue inappropriate for summary judgment. Defendants have not met their

9  burden to show the absence of disputed material fact.

10      For all of the reasons set forth above, the undersigned recommends that defendants'

11  motion for summary judgment (ECF No. 133) be DENIED in its entirety.

12                    **VI.    Plaintiff's Motion for Reconsideration**

13      Plaintiff filed a motion for reconsideration of the court's order at ECF No. 88, which

14  granted plaintiff's motion leave to file an amended complaint (ECF No. 83) except as to

15  plaintiff's request to revive his excessive force claim against Williams, which the court had

16  previously concluded was <u>Heck</u>-barred. ECF No. 88 at 8. In the court's order at ECF No. 88,

17  plaintiff was informed that a motion for reconsideration was the proper vehicle to attempt to

18  revive the claim against Williams. ECF No. 88 at 6. Following that instruction, plaintiff filed the

19  motion at bar. ECF No. 131.

20      The Federal Rules of Civil Procedure allow the court to reconsider and vacate a prior

21  order. Fed. R. Civ. P. 60(b); <u>Barber v. State of Hawai'i</u>, 42 F.3d 1185, 1198 (9th Cir. 1994). "A

22  party seeking reconsideration must show more than a disagreement with the Court's decision, and

23  recapitulation of the cases and arguments considered by the court before rendering its original

24  decision fails to carry the moving party's burden." <u>U.S. v. Westlands Water Dist.</u>, 134 F. Supp.

25  2d 1111, 1131 (E.D. Cal. 2001). Rather, to succeed on a motion for reconsideration, a party must

26  set forth "what new or different facts or circumstances are claimed to exist which did not exist or

27  were not shown upon such prior motion, or what other grounds exist for the motion" and explain

28  ////

1    "why the facts or circumstances were not shown at the time of the prior motion."  Local Rule

2    230(j)(3)-(4).

3        The history of this case is complicated by plaintiff's initial pro se representation.  On

4    September 19, 2020, while plaintiff was proceeding in pro se, the undersigned issued Findings

5    and Recommendations on a motion for summary judgment that had been filed by defendants,

6    recommending that the motion be granted as to Officer Williams pursuant to <u>Heck v. Humphry</u>.

7    ECF No. 52 at 10-12.  The undersigned reviewed the underlying plea agreement,  noting that "in

8    relevant part, plaintiff's plea stipulated that he was 'uncooperative' with Williams, that he made

9    movements 'with his hand as if he was preparing to draw an unknown type of weapon from his

10   waistband area,' that Williams gave him 'multiple commands to show his hands and to get out his

11   hands out of his pocket,' but that he 'continued to make movements to the area of his waistband,'

12   and that Williams "fired *one round*, causing [plaintiff] to fall to the ground.'"  <u>Id.</u> at 12, citing

13   ECF No. 43-8 at 134-35 (Sentencing Hearing Transcript, emphasis added), ECF No. 43-7 at 127-

14   28 (Criminal Complaint Summary of Events).

15       Plaintiff moves the court to reconsider the dismissal of the claims against Williams on

16   <u>Heck</u> grounds, arguing that new evidence suggests the possibility that Williams fired two rounds,

17   not the single round that Warden stipulated to in the plea agreement.  ECF No. 131 at 8-9.  At his

18   deposition, Williams explained the missing round by stating that he often did not fully load his

19   firearm.  ECF No. 131 at 6.  Defendants argue that the evidence that Williams fired more than one

20   round contradicted by the record.  ECF No. 147 at 13.  However, it is uncontroverted that two

21   rounds were missing from Williams' gun, and defendants concede that Williams testified he did

22   not remember whether his gun was fully loaded when he encountered Warden.  <u>Id.</u>  Whether the

23   gun was missing a bullet to begin with, or Williams actually fired two rounds at Warden, is a

24   legitimately disputed factual issue that was not before the court at the time of the initial summary

25   judgment motion.  Given the clarity provided by the recently decided Ninth Circuit <u>Estate of</u>

26   <u>Hernandez</u> case, discussed above, it is clear that if Williams did fire a second round after Warden

27   was on the ground, "a jury could reasonably find that [he] employed constitutionally excessive

28   force."  <u>Estate of Hernandez</u>, 139 F.4th at 795.  And a use of excessive force after Warden was on

1   the ground would not come within the scope of any Heck bar imposed by the plea.

2          Accordingly, reconsideration is warranted, and the undersigned finds plaintiff should be

3   permitted to file a Third Amended Complaint to include the excessive force claim against

4   Williams, as to the allegedly fired second shot only.

5                              **VII.    Conclusion**

6          Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendants'

7   motion for summary judgment (ECF No. 133 be DENIED.  It is further recommended that the

8   motion for reconsideration (ECF No.131) be GRANTED, and that plaintiff be given leave to file

9   a Third Amended Complaint adding only an excessive force claim against Officer Williams as to

10  an alleged second fired.

11         These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

15  document should be captioned "Objections to Magistrate Judge's Findings and

16  Recommendations."  Any response to the objections shall be filed with the court and served on all

17  parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

18  objections within the specified time may waive the right to appeal the District Court's order.

19  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

20  (9th Cir. 1991).

21         IT IS SO ORDERED.

22  DATED: June 30, 2025

23                                                 _____

24                                                 ALLISON CLAIRE
                                                   UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                             18